UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ANTHONY FOX,

                                        Plaintiff,

        vs.                                                         9:05-CV-1292
                                                                    (LEK/GJD)

WILLIAM BROWN, Superintendent
Eastern Correctional Facility,

                                        Defendant.

_____

ANTHONY FOX, Plaintiff pro se
GERALD J. ROCK, Asst. Attorney General for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

### REPORT-RECOMMENDATION

This matter has been referred to the undersigned for Report and

Recommendation by the Honorable Lawrence E. Kahn, United States District Judge,

pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights complaint, plaintiff alleges that defendants denied him

constitutionally adequate medical care and then had plaintiff transferred to a higher

security facility in retaliation for filing complaints about his medical care. (Dkt. No.

1).

Presently before the court is defendants' motion to dismiss the complaint

pursuant to FED. R. CIV. P. 12(b)(6). (Dkt. No. 11).  Plaintiff has responded in

opposition to the motion. (Dkt. No. 15).  Defendants have filed a reply, and plaintiff

has filed a sur-reply. (Dkt. Nos. 16, 18).  For the following reasons, this court will

recommend granting the motion in part and denying defendants' motion in part without prejudice to defendants filing a summary judgment motion if appropriate.

## DISCUSSION

1. **Motion to Dismiss**

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (citing *inter alia Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The court must accept the material facts alleged in the complaint as true. *Id.* (citing *Cooper v. Pate,* 378 U.S. 546 (1964)(per curiam)).  In determining whether a complaint states a cause of action, great liberality is afforded to *pro se* litigants. *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)(citation omitted).

When considering a motion to dismiss for failure to state a claim, the court may consider the complaint, together with any documents attached as exhibits or incorporated by reference. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1998).  In this case, plaintiff has attached as exhibits to the complaint, his facility grievances, together with the appeals of those grievances.  This court may, therefore, consider the facts contained in those exhibits.

2. **Facts**

Plaintiff alleges that he was transferred to Eastern Correctional Facility on June 15, 2005, but he was not immediately examined by the medical staff in violation of Department of Correctional Services (DOCS) Directive No. 4003, which provides that

inmates who are going to be double-celled must have a physical assessment within 48 hours of the double-cell placement. Complaint at p.3. Plaintiff states that he was examined a week later, and at that time, he complained of a "persistent skin rash" that had been bothering plaintiff for one month prior to his transfer to Eastern. *Id.* Plaintiff states that he also requested a "bottom bed pass" due to foot problems and a torn ligament in his thigh. *Id.*

Plaintiff alleges that his medical complaints were "totally ignored" and that he was denied a medical examination for these serious medical problems. *Id.* at pp.3-4. Plaintiff then states that he was "seen" by medical staff on June 19, 2005 and was given a July 9, 2005 appointment to see the doctor. *Id.* at p.4. Prior to this appointment, however, plaintiff filed a grievance regarding the lack of medical care. Plaintiff's Ex. A.

Plaintiff states that he went to his medical appointment on July 9, 2005, and was examined by Dr. Bhavsar.[1] *Id.* Plaintiff states that Dr. Bhavsar "refused" to examine, diagnose, or treat plaintiff even though plaintiff had open sores on his arms. *Id.* Plaintiff claims that Dr. Bhavsar's conduct was in violation of the DOCS Patient Bill of Rights, the DOCS Health Care Professional Code of Ethics, and in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. Complaint at p.4.

Plaintiff then alleges that based upon his grievance, he was granted an

---

[1] Plaintiff has misspelled the name of this defendant as Babusar. The correct spelling is Dr. Bhavsar. The court will refer to this defendant with the proper spelling of his name. Plaintiff has also misspelled the names of the other two doctor-defendants. The correct spelling of Dr. "Milosevic" is Dr. Milicevic, and the correct spelling of Dr. "Guzman" is Dr. Gusman. Defendants' Memorandum of Law at p.1 n.2. (Dkt. No. 11).

appointment with defendant Dr. Milicevic, the Facility Health Director. *Id.*  It appears that plaintiff's grievance hearing was held on July 13, 2005, and that during the grievance hearing, defendant Sergeant Lucas of the Inmate Grievance Resolution Committee (IGRC) called Dr. Milicevic and "instructed" him to deny plaintiff's request for a bottom bunk pass. Complaint at p.5.  Plaintiff also alleges that defendant Lucas instructed Dr. Milicevic to deny plaintiff diagnosis and treatment for plaintiff's skin condition because plaintiff was a "troublemaker," who constantly filed grievances. *Id.*

Plaintiff also seems to claim that his appointment with Dr. Milicevic was also on July 13, 2005, after the alleged telephone conversation with defendant Lucas. *Id.* at pp.4-5.  Plaintiff claims, based upon the July 13, 2005 telephone conversation, that defendant Lucas and defendant Milicevic entered into a "conspiracy" to deny plaintiff appropriate medical care for his skin condition.  Plaintiff claims that the "overt acts" in support of this conspiracy claim were the denial of appropriate medical care and plaintiff's subsequent transfer to another facility in violation of plaintiff's right to file grievances. Complaint at p.6.  Plaintiff also alleges that his subsequent transfer was in violation of procedural due process and in violation of New York State regulations. *Id.*

Plaintiff alleges that he was also examined twice by defendant Bhavsar. Plaintiff states that he saw defendant Bhavsar on July 8, 2005 and July 27, 2005. *Id.* Plaintiff alleges that during these two examinations, he asked defendant Bhavsar to examine and treat plaintiff's skin rash and a boil on plaintiff's neck, but that defendant Bhavsar refused to examine, diagnose, or treat plaintiff for his serious medical

condition. *Id.*

Plaintiff claims that on July 28, 2005, he reported to "'Emergency' Sick Call" for his persistent skin condition. *Id.* Plaintiff alleges that the nurse on duty referred plaintiff to defendant Dr. Gusman. Plaintiff claims that after only a "cursory" visual examination, Dr. Gusman diagnosed plaintiff with "scabies," a contagious condition. Complaint at p.7. Plaintiff was placed in medical isolation for 24 hours and treated with a topical cream. *Id.*

Plaintiff states that he was discharged the next day and told that a skin biopsy would be performed. *Id.* Plaintiff states that he was also examined by Dr. Gusman in August of 2005, after plaintiff filed a second grievance requesting an appointment with a dermatologist. *Id.* Plaintiff alleges that although the IGRC ruled in plaintiff's favor regarding the appointment with a specialist, defendant Gusman subsequently denied plaintiff access to the specialist.

Plaintiff states that he was transferred to Five Points Correctional Facility "without cause" on August 22, 2005. Complaint at p.8. Plaintiff claims that the transfer was in retaliation for the two grievances he filed. Plaintiff also claims that the transfer was in retaliation for plaintiff's refusal to sign a consent form allowing the facility to double cell plaintiff in excess of sixty days. *Id.* Plaintiff claims that on August 1, 2005, he was threatened by defendant Lucas that plaintiff would be transferred if he did not sign the consent form.

Plaintiff claims that defendant Lucas entered into a conspiracy with defendant Superintendent Brown to transfer plaintiff to Five Points, which is a higher security

facility than Eastern. Complaint at p.9. Plaintiff claims that he personally told defendant Brown of his medical problems and of his request to see a specialist. Plaintiff states that defendant Brown referred plaintiff to Mr. Wendell, the facility Deputy Health Director. Mr. Wendell allegedly responded to plaintiff's correspondence in two or three days, but plaintiff alleges that Mr. Wendell failed to conduct an investigation. *Id.* Plaintiff alleges that after he was transferred to Five Points Correctional Facility, the medical staff determined that the condition was not scabies and that Dr. Gusman had misdiagnosed plaintiff' condition.

Finally, plaintiff alleges that defendant Thomas Eagen, Grievance Director should not have been involved in denying the appeals of plaintiff's grievances because plaintiff had filed a lawsuit against defendant Eagen in the Southern District of New York, the appeal of which was still pending in the Second Circuit. Complaint at p.10. Plaintiff claims that defendant Eagen denied the grievance appeals in retaliation for the Southern District law suit and in an attempt to further deprive plaintiff of appropriate medical care.

Plaintiff makes claims under the Eighth Amendment; the Fourteenth Amendment Due Process Clause; state regulations, and DOCS Directives. Plaintiff also claims retaliation for the exercise of his First Amendment right to petition the government for redress of grievances.

### 3.   Exhaustion of Administrative Remedies

Defendants argue that plaintiff has not exhausted his administrative remedies as to his claims of retaliatory transfer as required by the Prison Litigation Reform Act,

(PLRA), 42 U.S.C. § 1997e(a).  The PLRA exhaustion requirement applies to ***all inmate suits about prison life***, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004).  The Second Circuit has also held, however, that the exhaustion requirement is an ***affirmative defense***, not a jurisdictional prerequisite, and there are instances in which the exhaustion requirement may either be waived or excused. *Id.* at 675. (citations omitted).

Additionally, as with other affirmative defenses, the defendant has the burden of proof to show that plaintiff failed to exhaust his administrative remedies. *McCoy v. Goord*, 255 F. Supp. 2d 233, 247-48 (S.D.N.Y. 2003).  Where questions of fact exist as to exhaustion, summary judgment is not appropriate. *Pendergrass v. Corrections Officers*, 01-CV-243A, 2004 U.S. Dist. LEXIS 28224, *6-7 (W.D.N.Y. Sept. 1, 2004). At the same time that the Second Circuit decided *Giano*, it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement and specifying various instances in which the requirement could be waived or excused. *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004)(remanding case to determine if defendant's alleged threats constituted "special circumstances" justified plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004)(whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion

requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004)(complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

Pursuant to these cases, the Second Circuit has developed a "three part inquiry" to determine whether an inmate fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006)(citing *Hemphill*, 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. *Id.*

The court notes that the Supreme Court's decision in *Woodford v. Ngo*, 126 S. Ct. 2387 (2006) may have changed the law regarding possible exceptions to the exhaustion requirement. In *Woodford*, the Supreme Court held that the PLRA's exhaustion requirement mandates "proper" exhaustion of administrative remedies. In *Woodford*, the plaintiff filed a grievance that was rejected as "untimely." *Id.* at 2384. Woodford appealed the procedural denial through the administrative process, and "technically" exhausted his administrative remedies because there were no administrative remedies "available" to him. *Id.* However, the Supreme Court held that the PLRA required "proper" exhaustion as a prerequisite to filing a section 1983 action in federal court. *Id.* at 2387. "Proper" exhaustion means that the inmate must complete the administrative review process ***in accordance with the applicable procedural rules***, including deadlines, as a prerequisite to bringing suit in federal court. *See id.* at 2385-93 (emphasis added).

8

It is unclear whether *Woodford* has overruled any decisions that recognize "exceptions" to the exhaustion requirement.  In fact, based upon the concurring opinion in *Woodford*, it appears that these decisions have ***not*** been overruled in that respect.  In that concurring opinion, Justice Breyer specifically noted that two circuits, the ***Second*** Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 126 S. Ct. at 2393 (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004))(Breyer, J. concurring).  Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a ***traditional exception that the statute implicitly incorporates***." *Id.* (emphasis added).

The Second Circuit has not specifically considered the effect that *Woodford* may have had on *Giano-Hemphill* line of cases.  However, in *Ruggiero v. County of Orange*, 467 F.3d 170, 175-76 (2d Cir. 2006), the Second Circuit stated that it did not need to determine what effect *Woodford* has upon the Second Circuit case law in the exhaustion area because in *Ruggiero*, the court found that plaintiff would not have prevailed even assuming the continued validity of the ability to "excuse" non-exhaustion.  In *Sloane v. Mazzuca*, the court stated that it would follow the "current" law in the Second Circuit until the Second Circuit specifically addressed the issue. *Sloane v. Mazzuca*, 04-CV-8266, 2006 U.S. Dist. LEXIS 79817, *19-20 (S.D.N.Y. Oct. 31, 2006)(citation omitted).

9

In *Hairston v. Lamarche*, Magistrate Judge Andrew Peck in the Southern District of New York utilized the Second Circuit's three-part test for exhaustion articulated by those Second Circuit cases. *Hairston v. Lamarche*, 05 Civ. 6642, 2006 U.S. Dist. LEXIS 55436, *21 (S.D.N.Y. Aug. 10, 2006)(Report-Recommendation) (M.J. Peck). Magistrate Judge Peck also noted that the Second Circuit had not ruled on the effect of *Woodford*, and stated that Southern District Court Judge Michael B. Mukasey used the *Hemphill* standard after *Woodford* while citing Justice Breyer's concurring opinion and noting that the result in *Woodford* might not be "compatible" with **some** of the cases in the Second Circuit applying *Hemphill*. *Id.* at *22 n.9 (citing *Collins v. Goord*, 438 F. Supp. 2d 399, 411 n.13 (S.D.N.Y. 2006)). *See also Hernandez v. Coffey*, 99 Civ. 11615, 2006 U.S. Dist. LEXIS 52066, *7-12 (S.D.N.Y. July 26, 2006)(D.J. William H. Pauley, III)(using the three-part *Hemphill* test after *Woodford* and specifically citing *Woodford*).

Other courts have distinguished cases in which the inmate ***himself causes the unavailability of the grievance process*** by simply not filing in a timely manner, with situations in which ***prison officials prevent inmates from using the administrative process***. *See Blackmer v. Northern New Hampshire Correctional Facility*, 06-CV-158, 2006 U.S. Dist. LEXIS 67598, *5-6 (D.N.H. Sept. 20, 2006)(M.J. James R. Muirhead), *approved*, 2006 U.S. Dist. LEXIS 92481 (D.N.H. Dec. 18, 2006)(D.J. Barbadoro). This court agrees with this distinction and finds that until the Second Circuit has specifically addressed the issue, a court must still determine whether "traditional exceptions" apply in a plaintiff's case.

In this case, there is no question that plaintiff has exhausted his medical care claims.  He filed two grievances regarding his medical care and appealed both of those grievances to the CORC.  Defendants argue that plaintiff has not exhausted his retaliatory transfer claims against defendants Lucas and Brown and has not exhausted any claims as against defendant Eagen.  The court would first point out even if the court were to find that plaintiff did not exhaust his retaliatory transfer claims, the medical care claims would be able to proceed since the Second Circuit has rejected a "total exhaustion"[2] rule for administrative remedies.  *See Ortiz*, 380 F.3d at 663.

Defendants argue that plaintiff's retaliatory transfer claims have not been exhausted.  It is true that plaintiff did not exhaust his administrative remedies regarding the retaliatory transfer ***prior to*** filing this action.  Plaintiff attempted to bring a grievance regarding his transfer ***after*** filing this action.  Generally, subsequent exhaustion of remedies is insufficient to comply with the PLRA. *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001).  Plaintiff's attempt to exhaust, however, shows this court that the transfer issue may fit into one of the exceptions to the exhaustion requirement.  A review of the IGRC's denial of the grievance brought by plaintiff shows that the IGRC found that the transfer issue was "out of the realm of the IGRC."

---

[2] As defendants point out, the Supreme Court has granted certiorari in a case in which the issue is the applicability of the "total exhaustion rule" under the PLRA exhaustion requirement. *Williams v. Overton*, No. 05-7142, 126 S. Ct. 1463 (2006)(granting petition for certiorari).  In *Williams*, the Sixth Circuit applied the "total exhaustion" rule in dismissing an inmate's civil rights case in which only one of two claims was exhausted. *Williams v. Overton*, 136 Fed. Appx. 859 (6th Cir. 2005).  Although defendants in this case urge this court to apply the total exhaustion rule, until the Supreme Court rules on the issue, this court is bound by the Second Circuit law articulated in *Ortiz*.

Dkt. No. 18, Ex. B at p.2.  The Superintendent's Appeal statement contained the same result. *Id.* at p.3.  The decision of the CORC did state that "[c]ontrary to the grievant's assertions, the CORC has not been presented with sufficient evidence to substantiate any malfeasance or retaliation by departmental staff, but then stated that plaintiff should "address his transfer concerns with his assigned counselor."

It appears that there is at least a question of whether plaintiff would have had an "available" remedy through the grievance procedure to challenge his retaliatory transfer.  If the remedy were not available, the transfer claim would fall into one of the exceptions to the exhaustion requirement.  Thus, this court will recommend denying defendants' motion to dismiss based upon plaintiff's failure to exhaust his retaliatory transfer claim prior to bringing this action.  The court will, therefore, proceed to a consideration of the motion to dismiss as it relates to the merits of plaintiff's claims.

## 4.   <u>Medical Care</u>

In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003).  There are two elements to the deliberate indifference standard. *Smith*, 316 F.3d at 183-84.  The first element is ***objective*** and measures the severity of the deprivation, while the second element is ***subjective*** and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

In order to meet the first element of the standard, plaintiff must show that he has a sufficiently serious illness or injury. *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition has been considered "sufficiently serious" when there is a "condition of urgency," one that may result in death, degeneration, or extreme pain. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The seriousness of a plaintiff's medical need may also be determined by reference to the effect of denying the particular treatment. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 310 (S.D.N.Y. 2001)(citation omitted). Thus, if unnecessary and wanton infliction of pain results from the denial of treatment, or if the denial of treatment causes the inmate to suffer a lifelong handicap or permanent loss, the condition may be considered "sufficiently serious." *Id.* (citing *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000)).

In order to meet the second element of the standard, plaintiff must demonstrate more than an "inadvertent" or negligent failure to provide adequate medical care. *Id.* (citing *Estelle*, 429 U.S. at 105-106). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.* In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). In order to be "deliberately indifferent" the defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists and he must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Disagreement with prescribed treatment does **not** rise to the level of a constitutional claim. *Sonds*, 151 F. Supp. 2d at 311.  Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id*. (citations omitted).  An inmate does **not** have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).  The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle*, 429 U.S. at 107).  Even if those medical judgments amount to negligence or malpractice, malpractice does **not** become a constitutional violation simply because the plaintiff is an inmate. *Id. See also Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under section 1983).  Thus, any claims of malpractice, or disagreement with treatment are not actionable under section 1983.  The court would point out that a **delay** in treatment, contrasted with a **denial** of treatment does not necessarily invoke the Eighth Amendment. *Magee v. Childs*, 9:04-CV-1089, 2006 U.S. Dist. LEXIS 14571, *12 (N.D.N.Y. Feb. 27, 2006)(Treece, M.J.).[3]

In this case, defendants argue that plaintiff has failed to state a claim for

---

[3] The court notes that in *Magee*, Magistrate Judge Treece issued a Report-Recommendation, recommending that plaintiff's complaint be dismissed on the merits. (Dkt. No. 28)(04-CV-1089). Although the case was ultimately dismissed due to plaintiff's failure to prosecute, including the failure to inform the court of his change of address, District Judge Gary L. Sharpe noted in his decision that he would have adopted Magistrate Judge Treece's recommendation. (Dkt. No. 32).

deliberate indifference.  Defendants claim that plaintiff has not alleged that he suffered from a "serious medical need" nor has he properly alleged that defendants were "deliberately indifferent" to that serious medical need.  The problem with defendants' argument is that plaintiff alleges that Dr. Bhavsar **refused** on two occasions to treat plaintiff after "a visual exam" revealed that the skin rash was serious. Complaint at pp.4, 6.  Defendants claim that a "skin rash" is not a "serious" medical need and cite *Troy v. Kuhlmann*, No. 96 Civ. 7190, 1999 WL 825622 *13 (S.D.N.Y. Oct. 15, 1999) for this proposition.  The court has reviewed *Troy*, and nowhere in that case does the court specifically state that a skin rash is not a serious medical need.

The court would also point out that *Troy* was before the court on a motion for **summary judgment**, in which the court could have had the opportunity to review the medical records in plaintiff's case in making the determination of whether plaintiff had a serious medical need.  While in some circumstances a skin rash may not be a serious medical need, plaintiff in this case states that this "rash" was causing **open sores** on his arms.  In a motion to dismiss, this court must accept the statements made in plaintiff's complaint as true, thus, it is impossible to say one way or another whether plaintiff's medical need was serious, sufficient to sustain the Eighth Amendment claim.  This court is not prepared to state that skin rash could not be a serious medical need under **any circumstances**.  Thus, this court will not recommend dismissal of plaintiff's Eighth Amendment claim as against Dr. Bhavsar.

Plaintiff then claims that defendant Lucas "instructed" defendant Dr. Milicevic

to deny plaintiff's request for a bottom bunk pass as well as to deny diagnosis and treatment of plaintiff's skin condition. Complaint at p.5.  Plaintiff alleges that defendant Lucas based this instruction on the fact that plaintiff was a "trouble maker" who was constantly filing grievances. *Id.*  Plaintiff states that when he was examined by Dr. Milicevic, she **refused** to treat plaintiff's rash, even though she observed the open sores.  In this section of the complaint, plaintiff alleges a retaliation claim, a conspiracy claim, as well as a claim under the Eight Amendment.

In a motion to dismiss, this court is not in a position to decide the truth of plaintiff's allegations since the law is quite clear that under Rule 12(b)(6), the court assumes the truth of plaintiff's allegations. *Cohen v. Koenig*, 25 F.3d at 1172. Assuming these facts alleged by plaintiff are true, this court cannot state that plaintiff could prove no set of facts that would entitle him to relief.[4]  Thus, the court will not recommend dismissal of the Eighth Amendment and retaliation claims as against defendants Lucas and Milicevic.  The court will consider the conspiracy claims against these two defendants in a separate section below.

However, the only allegations that plaintiff makes against defendant Dr. Gusman are that he "misdiagnosed" plaintiff's condition and "denied the plaintiff access to qualified expert treatment and diagnosis." Complaint at p.7.  Misdiagnosis, even to the point of medical malpractice does **not** rise to the level of a constitutional claim and is **not** actionable under section 1983. *Tomarkin, supra.*  Additionally,

---

[4] The court must emphasize that it is not making any determination of the truth or falsity of plaintiff's allegations.  In a motion to dismiss the court is not authorized to do so.

inmates do not have a constitutional right to the physician or specialist of their choice. Thus, the court will recommend dismissal of this action without prejudice as against Dr. Gusman.

The court does note that in addition to the constitutional claims, plaintiff lists a variety of other regulatory violations allegedly committed by the doctors. These claims cannot withstand dismissal since allegations that the doctors violated New York State codes or standards, like claims of malpractice, are not actionable under section 1983. The only actionable claims are ***constitutional*** and must involve deliberate indifference to serious medical needs. Thus, to the extent that plaintiff makes other non-constitutional claims against defendants, these non-constitutional claims may be dismissed.[5]

## 5.   <u>Transfer</u>

### A.  Due Process

Plaintiff alleges that he was improperly transferred to Five Points Correctional Facility in retaliation for his medical complaints. To the extent that plaintiff alleges a due process violation, this claim must be dismissed. It is well-settled that an inmate has no right to incarceration in any particular correctional facility, and transfer among facilities does not need to be preceded by any particular due process procedures. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005)(citing *Meachum v. Fano*, 427 U.S.

---

[5] Plaintiff alleges that the doctors violated the New York State Code of Professional Ethics; Department of Correctional Services Directive 4300; section 1.04(1) of the New York State Patient's Bill of Rights; Section 7.1(a)(1) of the new York State Division of Health Services Policy Manual. Although plaintiff states that all these rules and regulations are "applicable to the 8th Amendment," this is not the case.

215, 225)(holding that there is no liberty interest in avoiding transfer from a prison of a lower security level to one with a higher security level)).  In *Wilkinson*, the court stated that confinement in any one of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. *Id.* at 222.

There are exceptions to this rule, subject to the limitations set forth in *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995).  These exceptions will involve cases in which the confinement imposes "atypical and significant" hardship upon the inmate in relation to the ordinary incidents of prison life. *Id.*  In this case, plaintiff states that he was transferred to his current facility "without cause," in violation of due process as well as various New York State regulations.  Plaintiff states that he had a liberty interest in remaining at Eastern Correctional Facility, "a less restrictive facility." Complaint at p.9.  Plaintiff is incorrect in this bare assertion.  The fact that he was transferred without "cause" and that Five Points may have been more restrictive, in themselves, do not implicate the Due Process Clause.  Thus, any claims based upon due process may be dismissed.

### B. Retaliation

Plaintiff also alleges that he was transferred in retaliation for his medical complaints. Complaint at p.8.  It is true that any action taken by defendants in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988). In order to establish a claim of retaliation for the exercise of a

constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)).  The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).

Plaintiff has a constitutional right to file grievances. *See Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(the prosecution of a lawsuit and the filing of grievances are constitutionally protected activities).  Despite defendants broad discretion to transfer inmates, they may not transfer them solely in retaliation for the exercise of their constitutional rights. *See Gilmore v. Goord*, 415 F. Supp. 2d 220, 224 n.3 (W.D.N.Y. 2006)(citations omitted).

Plaintiff in this case claims that he was transferred to a higher security facility by defendant Lucas in retaliation for the grievances plaintiff was filing regarding his medical care.  Plaintiff also claims that he was transferred because he would not sign an agreement to extend the time that he was housed in a "double cell." Complaint at p.8.  Although it is true that claims of retaliation are easy to make, plaintiff has alleged that the transfer was close in time to the filing of the grievances.  He also alleges that defendant Lucas stated during plaintiff's July 13, 2005 grievance hearing that plaintiff was a trouble maker who liked to file grievances, and that the facility would "soon get

19

rid of his presence at the facility." *Id.*  Plaintiff claims that he was transferred on
August 22, 2005. *Id.*

   Once again, assuming the truth of these facts, this court cannot recommend
dismissal of any claims against defendant Lucas for retaliatory transfer.  However,
plaintiff also alleges that defendant Brown participated in the retaliatory transfer.  A
defendant must be personally involved in a constitutional violation and that
respondeat superior is not a proper basis for liability in a section 1983 action. *Polk
County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1034
(2d Cir.), *cert. denied*, 414 U.S. 1033 (1973).

   Defendant Brown is the superintendent of Eastern Correctional Facility, and
plaintiff states that on August 1, 2005, plaintiff spoke to defendant Brown personally
about his medical care claim, and that defendant Brown referred plaintiff to Mr.
Wendall, the facility Deputy Health Care Director. Complaint at p.9.  Plaintiff states
that Mr. Wendall replied to plaintiff's correspondence, but did not conduct a "proper
investigation," and plaintiff sent a copy of Mr. Wendell's reply to defendant Brown,
"who did not respond."  Plaintiff then makes the completely conclusory allegation that
defendant Brown then "conspired" with defendant Lucas to transfer plaintiff.

   The fact that plaintiff spoke to defendant Brown about his medical claim and
that defendant Brown referred plaintiff to the appropriate individual, who may or may
not have properly investigated the situation does not support in any way plaintiff's
allegation that defendant Brown was either personally involved in plaintiff's denial of
medical care or involved in some "conspiracy" with defendant Lucas to transfer

plaintiff. This type of completely conclusory allegation is insufficient to state a claim of conspiracy or a constitutional violation of any type. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)(conclusory allegations are insufficient to state a claim for relief under section 1983). Thus, this entire complaint may be dismissed as against defendant Brown.

Finally, plaintiff names Thomas Eagen, the Director of the Inmate Grievance Program. Plaintiff alleges that defendant Eagen denied the appeals of plaintiff's grievances because plaintiff an unrelated lawsuit against Eagen in the Southern District of New York. This court would first point out that defendant Eagen only denied one of the plaintiff's medical care grievances himself. The other grievance appeal denial is signed by defendant Eagen's designee, and there is no indication that defendant Eagen knew anything about the grievance.

Defendants also argue that plaintiff cannot show that the lawsuit filed by plaintiff was the substantial motivating factor behind the denial of plaintiff's grievance. Defendants have included a copy of the dismissal of plaintiff's lawsuit as Ex. 8. *Fox v. Fischer*, 04 Civ. 6718, 2005 U.S. Dist. LEXIS 11970 (S.D.N.Y. June 17, 2005)[6]. Defendants point out that the lawsuit to which plaintiff refers was dismissed on June 14, 2005, and plaintiff's first grievance appeal was denied on August 10, 2005, almost two months after the dismissal, and this was the appeal decided by defendant Eagen's designee. Defendant Eagen was not involved in plaintiff's

---

[6] The court notes that this case was decided on June 14, 2005, but filed on June 17, 2005. The difference in the dates is irrelevant to this court's findings.

grievance until September 7, 2005, and plaintiff had already been transferred on that date, and the defendant Eagen's decision also stated that new information showed that plaintiff has already been examined by a physician at Five Points (the facility to which plaintiff had been transferred). Thus, there is absolutely ***no indication*** that the denial of plaintiff's grievance was in retaliation for plaintiff's lawsuit against defendant Eagen, and the entire complaint may be dismissed as against this defendant.[7]

## 6.   Conspiracy

Plaintiff also claims that, based on the telephone call by defendant Lucas to Dr. Milicevic, a conspiracy claim is also stated.[8] In order to prove a section 1983 conspiracy, a plaintiff must show an agreement between two or more state actors, to act in concert to inflict a constitutional injury, and an overt act done in furtherance of that goal, causing injury to plaintiff. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Defendants argue that plaintiff's conspiracy claims are barred by the "Intracorporate Conspiracy Doctrine."

Pursuant to this doctrine, officers, agents, and employees of a single corporate entity are legally incapable of conspiring together. *See Nassau County Employee "L" v. County of Nassau*, 345 F. Supp. 2d 293, 304 (E.D.N.Y. 2004). This "corporate"

---

[7] Although I make no finding in this regard, I do note that plaintiff's Southern District lawsuit was amazingly similar to this action. In the Southern District action plaintiff alleged that various defendant "conspired" to deprive him of his constitutional right to adequate medical care for a sinus condition. The court granted defendants' motion to dismiss in that action. I note that there were many more facts admitted by plaintiff in that action regarding his medical care, notwithstanding the motion on the pleadings.

[8] The court has considered, and is recommending dismissal of the other conspiracy claims as conclusory as stated above.

doctrine has been extended to allegations of conspiratorial conduct between a public entity and its employees. *Id.*  This court would point out that most of these cases involve the claim that the ***entity*** conspired with its employees, such as claims in which the County itself is alleged to have conspired with its employees. *Id.*  Additionally, there is an exception to the doctrine when the corporate actors are not acting within the scope of their employment. *Id.*

Although the doctrine has been applied in at least one case in which the entity is the State,[9] this court does not agree with that application.  The Second Circuit does not appear to have decided this specific issue.  Cities and counties are "municipal corporations" and may be sued as entities.  Pursuant to the Eleventh Amendment, the State is not, and cannot be a defendant in a claim for money damages.  Plaintiff in this case, is claiming only that the individual defendants, who are being sued individually, conspired to deny him his constitutional rights.  In addition, plaintiff does make the argument that the defendants were "acting outside the scope of their employment."

The only conspiracy claim in this action that is not completely conclusory and can survive a motion to dismiss is the claim that defendant Lucas conspired with defendant Milicevic to violate plaintiff's Eighth Amendment rights.  Thus, this court will recommend denying the defendants' motion to dismiss as to this claim.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 11) be **GRANTED IN PART**, and this action **DISMISSED IN ITS ENTIRETY** as against

---

[9] *See Orafan v. Goord*, 411 F. Supp. 2d 153, 164-65 (N.D.N.Y. 2006)(V.D.J. Magnuson)

defendants **BROWN, GUSMAN, and EAGEN**, and it is

**RECOMMENDED**, that defendants' motion to dismiss be granted as to any *state law or regulatory claims*, and it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 11) be **DENIED** with respect to the **EIGHTH AMENDMENT CLAIMS ONLY** against defendants **MILICEVIC, BHAVSAR, and LUCAS**, without prejudice to defendants filing a motion for summary judgment, and it is further

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 11) be **DENIED** with respect to plaintiff's claim of retaliation against defendant **LUCAS only**, and it is further

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 11) be **DENIED** with respect to the conspiracy claim as to defendants **LUCAS and MILICEVIC**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 12, 2007

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge